UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| CHRISTINA M.,[1]<br>  *Plaintiff*,<br>v.<br><br>LELAND DUDEK,<br>ACTING COMMISSIONER OF SOCIAL SECURITY,[2]<br>  *Defendant*. | 3:23-cv-1491 (SVN)<br><br><br><br><br><br><br>March 31, 2025 |

**RULING ON PLAINTIFF'S MOTION TO REVERSE OR REMAND AND DEFENDANT'S MOTION TO AFFIRM DECISION OF COMMISSIONER**

Sarala V. Nagala, United States District Judge.

In this social security benefits case, the Administrative Law Judge ("ALJ") found that Plaintiff was not entitled to Disability Insurance Benefits ("DIB") because she was not disabled during the relevant period. Plaintiff appeals the Social Security Commissioner's denial of benefits, arguing that (1) the ALJ erred by misstating and mischaracterizing the evidence; (2) the ALJ erred by relying on his own lay opinion rather than the medical opinions of record; and that (3) substantial evidence does not support the ALJ's finding that Plaintiff retained a Residual Functioning Capacity ("RFC") of light, unskilled work with additional limitations. The Commissioner moves for affirmance of the ALJ's decision. For the reasons described below, Plaintiff's motion to reverse, or in the alternative, remand is DENIED, and the Commissioner's motion to affirm the decision of the Commissioner is GRANTED.

---

[1] In opinions issued in cases filed pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g), in order to protect the privacy interest of social security litigants while maintaining public access to judicial records, this Court will identify and reference any non-government party solely by first name and last initial. *See* Standing Order – Social Security Cases (D. Conn. Jan. 8, 2021).

[2] The current Acting Commissioner of the Social Security Administration is Leland Dudek. Pursuant to Federal Rule of Civil Procedure 25(d), the Clerk of Court is directed to substitute Leland Dudek for Kilolo Kijakazi in this action, and to designate that he is the Acting Commissioner.

I. **BACKGROUND**

The Court assumes the parties' familiarity with Plaintiff's medical history, as summarized in her statement of facts, ECF No. 17-1, which the Court adopts and incorporates by reference. The Court also assumes familiarity with the five sequential steps used in the analysis of disability claims, the ALJ's opinion, and the record.[3] The Court will only cite portions of the record and the legal standards necessary to explain its decision.

II. **LEGAL STANDARD**

It is well-settled that a district court will reverse the decision of the Commissioner as to whether a claimant is disabled only when it is based upon legal error or when it is not supported by substantial evidence in the record. *See, e.g.*, *Greek v. Colvin*, 802 F.3d 370, 374–75 (2d Cir. 2015) (*per curiam*); 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotation marks and citation omitted).

"In determining whether the agency's findings were supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (*per curiam*) (internal quotation marks and citation omitted). Under this standard of review, "absent an error of law, a court must uphold the Commissioner's decision if it is supported by substantial evidence, even if the court might have ruled differently." *Campbell v. Astrue*, 596 F. Supp. 2d 446, 448 (D. Conn. 2009). The court must therefore "defer to the

---

[3] Citations to the administrative record, ECF No. 11, appear as "Tr." followed by the page number appearing in the bottom right-hand corner of the record.

Commissioner's resolution of conflicting evidence," *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012), and reject the Commissioner's findings of fact only "if a reasonable factfinder would *have to conclude otherwise*," *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012). Stated simply, "[i]f there is substantial evidence to support the [Commissioner's] determination, it must be upheld." *Selian*, 708 F.3d at 417.

**III.   DISCUSSION**

The Court holds that the ALJ did not err by misstating or mischaracterizing evidence of Plaintiff's treatment progress during the relevant period, and that his RFC determination that Plaintiff is able to perform light, unskilled work is supported by substantial evidence and is not based on his "layperson" judgment.

A.   <u>The ALJ Accurately Characterized Plaintiff's Treatment Progress</u>

The Court begins with Plaintiff's argument that the ALJ mischaracterized Plaintiff's pain conditions as improved with treatment to find that her conditions were not disabling.

For Plaintiff to obtain DIB, she "must demonstrate that she was disabled on the date she was last insured for benefits." *Swainbank v. Astrue*, 356 F. App'x 545, 547 (2d Cir. 2005) (summary order). In the present case, Plaintiff's date last insured was March 31, 2020, with an amended alleged onset date of June 14, 2018. Tr. at 17. Thus, Plaintiff must establish disability on or before March 31, 2020, in order to be entitled to DIB.

Here, the ALJ accurately observed that the medical records showed improvement in Plaintiff's back and shoulder conditions from the amended alleged onset date through March 31, 2020, the date Plaintiff was last insured. The ALJ's conclusions that Plaintiff was "limited by her degenerative disc disease of the lumbar spine with anterolisthesis and pars defect [and] degenerative joint disease of the right AC joint with impingement on the junction of supraspinatus

3

and tendinopathy" but that "these limitations are not disabling," *id.* at 24, are each supported by specific findings for each condition based on the record. *Id.* at 24–29. Plaintiff's last appointment to address her back condition before the date last insured was on June 4, 2019; for her shoulder condition, it was on October 4, 2019. *Id.* at 29–30. Following those two appointments, the medical record does not show any subsequent treatment for Plaintiff's back or shoulder conditions through March 31, 2020, the date last insured. *Id.* at 29.

In assessing that Plaintiff's back condition had improved between the alleged onset date of June 14, 2018, and her final appointment on June 4, 2019, the ALJ found that Plaintiff's back condition "responded well to treatment with medication, physical therapy, and injections within a year of the amended alleged onset date." *Id.* At Plaintiff's June 4, 2019, appointment, which occurred two weeks after she received an epidural steroid injection to target her back pain, Plaintiff reported that "her back and right leg pain ha[d] gotten significantly better than before" and a that her pain level was "1–2 out of 10." *Id.* at 840. Her treating physician noted that her gait and strength remained normal, instructed Plaintiff to continue her home exercise program regularly now that her "symptoms have gotten significantly better," and suggested a follow-up appointment in five to six months or when necessary for further review. *Id.* at 841–42.

As for Plaintiff's shoulder condition, which Plaintiff reported to have started in January of 2019, *id.* at 29, the ALJ found that Plaintiff reported "0/10 pain at rest" at her October 4, 2019, appointment and that a corticosteroid injection had improved the pain. *Id.* at 30, 902. Although Plaintiff reported that her shoulder discomfort was getting worse, she declined additional corticosteroid injections when offered during that appointment. *Id.* at 902–03.

It is therefore clear that the ALJ's findings are all based on "more than a mere scintilla" of evidence, *Talavera*, 697 F.3d at 151, and that the ALJ did not misconstrue the record, as Plaintiff

4

argues. Plaintiff nonetheless challenges the ALJ's determination, arguing that she did not experience any long-term improvement of her symptoms and that improvements, if any, were short-lived and partial. Pl.'s Br., ECF No. 17-1 at 33. The Court rejects these arguments, as Plaintiff's evidence of her worsening symptoms come from medical treatment appointments that either occurred after the date last insured or are based on Plaintiff's other pain conditions. For example, Plaintiff asserts that she "was unable to get even this modest level of relief from epidural steroid injections after" her June 4, 2019, follow-up appointment, but she points to medical records from May of 2020 and later to demonstrate the worsening of her back condition. *Id.* at 34–35. None of these appointments occurred during the relevant period, and there is no evidence of the allegedly worsening condition of Plaintiff's back in the nine months between the June 4, 2019, appointment and the date of last insured.

With respect to her shoulder pain, there is likewise a gap in the evidence between her last appointment for this condition on October 4, 2019, and the date she was last insured. Plaintiff points to her carpal tunnel syndrome symptoms to support her claims of her worsening shoulder condition, *see id.* at 35–36, but she does not explain how her carpal tunnel syndrome condition relates to her shoulder pain. And, in any event, after the date last insured, Plaintiff underwent carpal tunnel release surgery with ganglion cyst removal in July of 2020. Tr. at 1047. Following this surgery, Plaintiff was able to make a full fist and had full thumb opposition strength during her follow-up examination in August of 2020, and had improved sensation by October of 2020. *Id.* at 1041, 1006. Plaintiff refers to nothing else in the record to show that her shoulder condition had not improved after her appointment in October of 2019.

Accordingly, the ALJ neither mischaracterized nor misstated the evidence in concluding that Plaintiff's back and shoulder conditions improved over the course of the relevant period. The ALJ's conclusion is supported by substantial evidence.

B. <u>Substantial Evidence Supports the ALJ's RFC Finding</u>

Next, the Court rejects Plaintiff's challenge that the ALJ failed to explain the basis of his RFC finding and improperly relied on his own lay opinion. Specifically, Plaintiff asserts that the ALJ should have found that she required sedentary work and an off-task restriction. Pl.'s Br. at 38, 40.

An RFC finding is "administrative in nature, not medical, and its determination is within the province of the ALJ." *Curry v. Comm'r of Soc. Sec.*, 855 F. App'x 46, 48 n.3 (2d Cir. 2021) (summary order); *see also* 20 C.F.R. § 404.1520c. In making this determination, the ALJ must consider all relevant medical and other evidence. *See Curry*, 855 F. App'x at 48 n.3; 20 C.F.R. § 404.1545(a)(3). Moreover, it is within the ALJ's discretion to resolve genuine conflicts in the evidence. *Schaal v. Apfel*, 134 F.3d 496, 504 (2d Cir. 1998) ("It is for the [Commissioner], and not this court, to weigh the conflicting evidence in the record."); *Henderson v. O'Malley*, No. 23-712-cv, 2024 WL 1270768, at *2 (2d Cir. Mar. 26, 2024) (summary order). As a result, "the ALJ's RFC conclusion need not perfectly match any single medical opinion in the record, so long as it is supported by substantial evidence." *Schillo v. Kijakazi*, 31 F.4th 64, 78 (2d Cir. 2022).

An ALJ need not defer or give any special weight to any particular medical opinion. 20 C.F.R. § 404.1520c(a). Instead, an ALJ is charged with evaluating a number of factors in determining the weight to give an opinion, the most important of which are the opinion's consistency and the opinion's supportability. *Id.* § 404.1520c(b).

6

Here, the ALJ, in determining Plaintiff's RFC, found that Plaintiff could perform light exertional work with certain limitations, including that she could stand and walk for up to four hours during each eight-hour workday; could not reach overhead with her right upper extremity, work at unprotected heights, or climb ladders, ropes, or scaffolds; could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; and only perform simple, routine tasks that would only require her to "recall and execute short, uninvolved instructions." Tr. at 23. In reaching this conclusion, the ALJ found opinions by state agency consultants Dr. Samuel Bridgers, Dr. Abraham Colb, and Dr. Katrin Carlson generally persuasive and found the opinion of Dr. Marc Hillbrand partially persuasive. He also considered evidence that post-dated the state agency consultants' reviews, which took place between May 8, 2019, and September 11, 2019. *Id.* at 30–32. Plaintiff argues that the ALJ does not explain the basis of his RFC determination, and that the record warrants further exertional and non-exertional findings that the ALJ failed to make. Pl.'s Br. at 38.

  1. *Physical Limitations*

Beginning with Plaintiff's physical limitations, the Court finds that the ALJ's RFC determination is supported by substantial evidence. Plaintiff argues that she is only able to perform sedentary work, rather than light work with certain limitations, due to her back and shoulder conditions and carpal tunnel syndrome. *Id.* Plaintiff asserts that the ALJ "offered no explanation of what he relied on for his formulation of [Plaintiff]'s RFC description." *Id.* at 37. To the contrary, the opinions of Dr. Bridgers and Dr. Colb, as well as Plaintiff's medical treatment records through the date last insured, informed the ALJ's RFC finding, and support it.

First, the ALJ reasonably relied on the state agency medical consultants' opinions to find that Plaintiff could stand and walk for up to four hours during each eight-hour workday; could

7

occasionally climb ramps and stairs; and could occasionally balance, stoop, kneel, crouch, and crawl. Tr. at 32. Dr. Bridgers, who reviewed the evidence in May of 2019, found that Plaintiff could, among other things, stand and walk for up to four hours in an eight-hour workday; could occasionally climb ramps, stairs, ladders, ropes, and scaffolds; and could occasionally balance, stoop, kneel, crouch, and crawl. *Id.* at 99–100. When Dr. Colb reviewed the record in September of 2019 after Plaintiff sought reconsideration, he made the same findings as Dr. Bridgers, except that Plaintiff could stand and walk for up to *six* hours in an eight-hour workday. *Id.* at 133–34. The Court agrees with the ALJ's observation that Dr. Bridgers and Dr. Colb's findings were "internally consistent" and "generally consistent with the record overall," *id.* at 31, especially given that the evidence available after their reviews does not raise doubts as to their reliability. *See Camille v. Colvin*, 652 F. App'x 25, 28 n.4 (2d Cir. 2016) (summary order). Indeed, Plaintiff's last medical appointment prior to the date last insured to address her back condition occurred on June 4, 2019, which Dr. Colb had the opportunity to assess.

      Next, the Court rejects Plaintiff's argument that the ALJ improperly relied on his own lay opinion to identify additional restrictions not specified in Dr. Bridgers and Dr. Colb's reviews. The ALJ diverged from the state agency medical consultants' determinations by finding that Plaintiff could not climb ladders, ropes, or scaffolds; could not work at unprotected heights; and could not reach overhead with her right arm. *See* Tr. at 32. These findings are supported by substantial evidence. The ALJ acknowledged that Dr. Bridgers and Dr. Colb did not have the opportunity to review evidence submitted through the date of the hearing or to hear Plaintiff's testimony, *id.* at 31. Unlike the state agency medical consultants, then, the ALJ accounted for Plaintiff's shoulder condition, which he classified as a "severe" impairment. *Compare id.* at 99, 133–34 at (Dr. Bridgers and Dr. Colb noting only back and leg pain, obesity, and colitis) *with id.* at 19, 27–31

(ALJ reviewing Plaintiff's shoulder impairment). An ALJ can appropriately consider medical records post-dating the medical opinion evidence. *See Wakefield v. Comm'r of Soc. Sec.*, No. 19-cv-655 (MWP), 2020 WL 3100852, at *6 (W.D.N.Y. June 11, 2020). And in the end, as noted above, the RFC is "administrative in nature, not medical, and its determination is within the province of the ALJ." *Curry v*, 855 F. App'x at 48 n.3.

The ALJ's decision to limit Plaintiff to only light work with additional limitations, rather than sedentary work, is similarly supported by substantial evidence. As described above, the ALJ found that the medical record does not show any subsequent treatment for Plaintiff's back condition after June 4, 2019, and Plaintiff's shoulder condition after October 4, 2019, through March 31, 2020, the date last insured. Tr. at 29. At the June 4, 2019, appointment, the medical provider observed that Plaintiff's back pain had gotten "significantly better." *Id.* at 842. Although Plaintiff reported at the October 4, 2019, appointment that her shoulder discomfort was worsening, she declined additional corticosteroid injections, opted for more conservative treatment, and did not seek further treatment for the condition through March 31, 2020. *Id.* at 902–03; *id.* at 28. Plaintiff has not satisfied her burden of establishing a more restrictive RFC, as she fails to point to any objective medical findings or opinions, aside from her self-reporting to providers, to assert that greater limitations are warranted. *See Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018) (summary order).

Likewise, Plaintiff's assertion that a manipulative limitation is warranted is similarly unavailing. Plaintiff claims that "the record reflects far greater restriction" than just a limitation on reaching overhead with the right arm due to her carpal tunnel syndrome. *See* Pl.'s Br. at 39–40. The ALJ accounted for this condition and properly found that carpal tunnel syndrome "did not cause more than minimal functional limitations." Tr. at 20. As described above, after the date last

insured, Plaintiff had undergone a carpal tunnel release surgery with ganglion cyst removal and had improved sensation by October of 2020. *See id.* at 1047, 1041, 1006. For these reasons, the Court concludes that substantial evidence supports the physical limitations in the ALJ's RFC finding, and that the ALJ did not substitute his own layperson judgment for competent medical opinion.

    2. *Mental Impairments*

With respect to Plaintiff's psychological limitations, the ALJ relied on Dr. Carlson's review, which he found "generally persuasive," Dr. Hillbrand's consultative opinion, which he found "partially persuasive," Plaintiff's medical records, and Plaintiff's statements. *See id.* at 21–22, 28–33. Plaintiff claims that the ALJ did not account for Plaintiff's expected time off task in a work setting due to his failure to consider portions of Dr. Hillbrand's consultative examination report. *See* Pl.'s Br. at 40. This argument misses the mark, as the portions of the report Plaintiff identifies are, in fact, factored into the RFC analysis. *See* Tr. at 28, 32. Dr. Hillbrand's assessment that Plaintiff is moderately impaired in her ability to understand, remember, and apply complex instructions, make judgments on complex work-related decisions, and maintain concentration, *see id.* at 868, is consistent with the RFC's limitation that Plaintiff can perform simple, routine tasks and can recall and execute short, uninvolved instructions. *Id.* at 32–33; *see also id.* at 135 (Dr. Carlson finding Plaintiff's abilities to carry out detailed instructions and to maintain concentration for extended periods are moderately impaired). Moreover, the ALJ incorporated Dr. Carlson's determination that Plaintiff "remains capable of understanding/recalling short instructions," *id.*, and Plaintiff's self-report that although she has trouble completing tasks, she is able to occasionally prepare meals, do chores inside the house, drive, go shopping, manage her finances, and is good at following instructions, *see id.* at 383–86. *Id.* at 24, 31. By limiting Plaintiff to simple work

requiring only the ability to recall and execute short, uninvolved instructions, the ALJ incorporated into the RFC the moderate limitations supported by the record. *See Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) (holding moderate impairments in work-related functioning are consistent with an RFC finding of unskilled work); *Rushford v. Kijakazi*, No. 23-317, 2023 WL 8946622, at *2 (2d Cir. Dec. 28, 2023) (summary order) ("[I]t is well-established that such moderate limitations do not prevent individuals from performing 'unskilled work.'").

To the extent Plaintiff might be suggesting that the ALJ erred in finding unpersuasive Dr. Hillbrand's opinion that Plaintiff is moderately limited in interacting with others and in responding appropriately to usual work situations and changes in routine, the issue has been waived. The ALJ determined that Dr. Hillbrand's conclusion as to those two areas was inconsistent with the record and therefore unpersuasive, given that Plaintiff's mental health treatment was "routine and conservative" and that Dr. Hillbrand observed Plaintiff had, among others, good social skills. *See* Tr. at 32. While Plaintiff asserts, to support an off-task limitation, that Dr. Hillbrand found Plaintiff to be moderately impaired in her ability to interact with others and in responding appropriately to usual work situations and changes in routine, Plaintiff does not specifically challenge the ALJ's determination on this particular issue. Pl.'s Br. at 40. Defendant argues that Plaintiff has thus waived the issue, Def.'s Br., ECF No. 21-1 at 16, and the Court agrees. *See Vilardi v. Astrue*, 447 F. App'x 271, 272 n.2 (2d Cir. 2012) (summary order) (holding that issues not raised on appeal are deemed waived).

But even if Plaintiff did not waive the issue, the ALJ's finding regarding that portion of Dr. Hillbrand's report is supported by substantial evidence. The ALJ determined that Plaintiff has a mild—rather than moderate—limitation in interacting with others after finding that Plaintiff testified that she does not have issues getting along with others and based on Dr. Hillbrand's

11

observations that Plaintiff's "affect fell within the normal range, she related in a friendly manner, and she had good social skills." Tr. at 22. As for the ability to respond appropriately to usual work situations and changes in routine, the ALJ found that Plaintiff also has a mild—rather than moderate—limitation based on, among other things, Plaintiff's self-report that she manages stress well and can handle changes in routine, Dr. Hillbrand's observations, and treatment records reflecting that Plaintiff "regularly had a normal mood and affect on examination." *Id.* These findings are well-supported by the record, and Plaintiff does not attempt to specifically challenge them.

As a result, the ALJ's RFC finding that Plaintiff can perform simple, routine tasks and can recall and execute short, uninvolved instructions is supported by substantial evidence.

## IV. CONCLUSION

For the reasons described herein, Plaintiff's motion is DENIED and Defendant's motion is GRANTED. The Clerk is directed to substitute Leland Dudek for Kilolo Kijakazi in this action, and then enter judgment for Defendant and close this case.

**SO ORDERED** at Hartford, Connecticut, this 31st day of March, 2025.

                                     */s/ Sarala V. Nagala*
                                     SARALA V. NAGALA
                                     UNITED STATES DISTRICT JUDGE